MICHAEL T. HAAS AND WYNN MARTIN HAAS V. JAMES S. WARREN AND WARREN AND PERRY, ATTORNEYS AT LAW

No. 571PA93

(Filed 28 July 1995)

**1. Attorneys at Law § 45 (NCI4th)— foreclosure—advertisement of Franklin County land in Wake County newspaper— standard of care**

Plaintiffs' evidence in this legal malpractice action, presented primarily through the testimony of defendants, was sufficient to establish the applicable standard of care of attorneys in defendants' legal community for publishing notices of sale in foreclosure proceedings where it tended to show that defendant attorney and defendant law firm attempted to save money in a foreclosure proceeding by advertising the sale of land in Franklin County in a Wake County newspaper, *The Wake Weekly*, rather than in *The Franklin Times*; it was the practice of defendant law firm, and the established practice in defendants' legal community, to advertise foreclosure notices for land located in Franklin County in *The Franklin Times*; neither defendant law firm nor any other firms in defendants' legal community had deviated from this practice prior to plaintiffs' foreclosure proceeding; an attorney must look to case law and the General Statutes to determine whether a course of action complied with the requirements of the law; and an associate of defendant law firm explained the proce-

dure utilized by attorneys in researching a specific issue in the General Statutes.

**Am Jur 2d, Attorneys at Law § 199.**

**Liability of attorney for negligence in connection with investigation or certification of title to real estate. 59 ALR3d 1176.**

2. **Attorneys at Law § 48 (NCI4th)— foreclosure—advertisement of Franklin County land in Wake County newspaper— statutory violation—legal malpractice—sufficiency of evidence**

Plaintiffs' evidence was sufficient for the jury on the issue of whether defendants breached the standard of care for attorneys in defendants' legal community for publishing notices of sale in foreclosure proceedings where it tended to show that defendants attempted to save money in plaintiffs' foreclosure proceeding by advertising the sale of land in Franklin County in a Wake County newspaper, *The Wake Weekly*, rather than in *The Franklin Times*; *The Wake Weekly* did not comply with N.C.G.S. § 1-597 for purposes of publishing the notice of sale for land located in Franklin County; an associate in defendant law firm researched the question of the legality of publishing notice in *The Wake Weekly* by looking in the General Statutes but did not discover N.C.G.S. § 1-597 although it was properly indexed therein; and publication in *The Franklin Times* was in compliance with the standard practice of the community and with statutory requirements.

**Am Jur 2d, Attorneys at Law §§ 202, 216.**

**Liability of attorney for negligence in connection with investigation or certification of title to real estate. 59 ALR3d 1176.**

Justice LAKE did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 112 N.C. App. 574, 436 S.E.2d 259 (1993), affirming a directed verdict for defendants entered by Jenkins, J., on 30 September 1991 in Superior Court, Wake County. Heard in the Supreme Court 9 January 1995.

*Everett Gaskins Hancock & Stevens, by E.D. Gaskins, Jr., Hugh Stevens, and Katherine R. White, for plaintiff-appellants.*

*Bailey & Dixon, by Patricia P. Kerner, for defendant-appellees.*

FRYE, Justice.

The primary issue presented on this appeal is whether plaintiffs' evidence was sufficient to take the case to the jury on the issue of whether defendants breached the standard of care owed plaintiffs. We conclude that it was; therefore, we reverse the decision of the Court of Appeals and remand this case for further proceedings.

This legal malpractice action had its genesis in an abortive effort by defendant Warren and his law firm to save money in a foreclosure proceeding by advertising the sale of land located in Franklin County in a Wake County newspaper. Warren, trustee for plaintiffs under a deed of trust, was asked by plaintiffs to begin foreclosure proceedings; accordingly, his firm placed the advertisement for the foreclosure sale. Following the sale, the adequacy of this advertisement was challenged in a lawsuit brought by the debtors under the note secured by the deed of trust. Defendants and plaintiffs agreed to a settlement of that lawsuit by consenting to set aside the sale and conduct a new sale. After publishing the legal notice again, this time in *The Franklin Times*, defendants conducted a second foreclosure sale, which went unchallenged by the debtors. Plaintiffs, purchasers at both foreclosure sales, were required to pay a higher price at the subsequent sale and incurred additional expenses due to the initial aborted sale. Accordingly, plaintiffs commenced this action against defendants based on legal malpractice in the handling of the foreclosure.

Plaintiffs' evidence tended to show that Warren, as trustee, and his law firm took the admittedly unusual step of publishing the notice of sale in *The Wake Weekly* to avoid the high advertising costs of *The Franklin Times*; that defendants had always advertised foreclosure notices for land located in Franklin County in *The Franklin Times* and that this was also the accepted practice among other attorneys in the community; and that an associate in the firm researched the propriety of publishing the notice in *The Wake Weekly* but did not find and was unaware of N.C.G.S. § 1-597, which provides that a legal notice which is required to be advertised in a newspaper "shall be of no force and effect unless it shall be published in a newspaper with a general circulation to actual paid subscribers which newspaper at the time of such publication, advertisement or notice, shall have been

admitted to the United States mails as second class matter in the county or political subdivision where [the land in question is situated]." N.C.G.S. § 1-597 (1983). The trial court took judicial notice of the fact that *The Wake Weekly* did not comply with N.C.G.S. § 1-597 for purposes of publishing the notice of sale for land located in Franklin County.

At the close of plaintiffs' evidence, the trial court granted defendants' motion for directed verdict. The Court of Appeals affirmed, concluding that plaintiffs had failed to produce evidence establishing the standard of care for attorneys in the same or similar community and thus had failed to establish that defendants' actions violated this standard. The court further concluded that plaintiffs had failed to produce evidence that a competent attorney would have found or been aware of N.C.G.S. § 1-597. *Haas v. Warren*, 112 N.C. App. 574, 436 S.E.2d 259 (1993). We allowed plaintiffs' petition for discretionary review, and for the reasons stated herein, we now reverse the decision of the Court of Appeals.

In order to show negligence in a legal malpractice action, the plaintiff must first prove by the greater weight of the evidence that the attorney breached the duties owed to his client, *Hodges v. Carter*, 239 N.C. 517, 80 S.E.2d 144 (1954), and then show that this negligence proximately caused damage to the plaintiff, *Rorrer v. Cooke*, 313 N.C. 338, 329 S.E.2d 355 (1985). The duties promulgated by *Hodges* are:

> Ordinarily when an attorney engages in the practice of the law and contracts to prosecute an action in behalf of his client, he impliedly represents that (1) he possesses the requisite degree of learning, skill, and ability necessary to the practice of his profession and which others similarly situated ordinarily possess; (2) he will exert his best judgment in the prosecution of the litigation entrusted to him; and (3) he will exercise reasonable and ordinary care and diligence in the use of his skill and in the application of his knowledge to his client's cause.

*Hodges*, 239 N.C. at 519, 80 S.E.2d at 145-46.

In *Rorrer v. Cooke*, we elaborated on the standard of care applicable to attorneys, stating:

> The third prong of *Hodges* requires an attorney to represent his client with such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake. The standard is

that of members of the profession in the same or similar locality under similar circumstances.

*Rorrer*, 313 N.C. at 356, 329 S.E.2d at 366.

Under *Rorrer* and *Hodges*, plaintiffs were required in this case to show that defendants failed to exercise reasonable and ordinary care and diligence in the use of their skill and in the application of their knowledge to represent plaintiffs in the foreclosure proceedings. Plaintiffs were required to show that defendants, in conducting the foreclosure, failed to live up to the standard of care of members of the legal profession in their legal community or in a similar locality under similar circumstances.

In the instant case, the trial judge removed these issues from the jury's consideration by directing a verdict for defendants. In reviewing the grant of directed verdict for defendants, we must consider the evidence in the light most favorable to plaintiffs, as the nonmoving party. *West v. Slick*, 313 N.C. 33, 40-41, 326 S.E.2d 601, 606 (1985). We may affirm the directed verdict for defendants only if, as a matter of law, a recovery cannot be had by plaintiffs upon any view of the facts which the evidence reasonably tends to establish. *Id.* at 40, 326 S.E.2d at 606. All of the evidence that supports the plaintiffs' claim must be taken as true and considered in the light most favorable to the plaintiffs, giving them the benefit of every reasonable inference that may legitimately be drawn therefrom, and with contradictions, conflicts, and inconsistencies being resolved in their favor. *Braswell v. Braswell*, 330 N.C. 363, 367, 410 S.E.2d 897, 899 (1991), *reh'g denied*, 330 N.C. 854, 413 S.E.2d 550 (1992).

[1]   We believe that plaintiffs' evidence, viewed in the light most favorable to them, does establish the standard of care of attorneys in defendants' legal community in conducting foreclosure proceedings, specifically the publishing of notices of sale. Further, this evidence was sufficient to permit the jury to determine whether defendants breached this standard of care.

When viewed in the light most favorable to plaintiffs, plaintiffs' evidence, presented primarily through the testimony of defendants, established that no other attorneys in defendants' legal community published notices of sale for land located in Franklin County in a Wake County newspaper, such as *The Wake Weekly*. Likewise, it had been the practice of defendant law firm to publish such notices in *The Franklin Times*, not *The Wake Weekly*. Defendants' stated motivation

for departing from this established practice was a desire to save money in the foreclosure proceedings.

At trial, an associate in defendant law firm testified:

Q   So it's correct to say that you had, you had never published a notice of foreclosure sale on a Franklin County foreclosure in the Wake Weekly until you undertook to do it on Mr. Haas' foreclosure, is that correct?

A   Yes, with the proviso that it was at the first of the foreclosures, first actually of three. That's where I got confused.

Q   No other attorney in the firm had had a foreclosure in Franklin County published in the Wake Weekly prior to that time, had they, prior to the first?

A   Prior to, prior to the first appearance, that's correct.

Q   All right, why did you decide to publish—would you tell the jury how you decided to publish the notice in the Wake Weekly?

A   Okay, we had been concerned with the publication rates charged by the Franklin Times. By our calculation the rates for the Franklin Times were approximately two and a half times the rates charged by the Wake Weekly. We researched the applicable law carefully to determine that in effect the Franklin Times was not our sole avenue for publication. Let me back up. The problem with the expense—we were not paying the expense. The expense was ultimately being borne by the party who acquired the property at foreclosure, since the bidding would include an amount of money necessary to pay all the costs we had incurred as trustee. So, in essence, our, our goal frankly was to lower substantially the cost incurred by the parties acquiring properties at foreclosure.

Defendant Warren then testified to the following:

Q   Now you talked to some attorneys in the area also, didn't you?

A   I did.

Q   And you inquired of them, among other things, what their practice was with respect to the publication of notice for Franklin County foreclosure, didn't you?

A	I discussed it with other attorneys over a period of time. This is something I wanted to do for quite a few years. Again, other than Charles Davis, I can't even recall who I might have discussed it with. I certainly wasn't discussing it just for Franklin County.

Q	Now at the point in time these discussions occurred, your firm had never placed such an ad in the Wake Weekly, is that right?

A	That would be correct.

Q	You inquired of these other attorneys about their practice in that respect, didn't you?

A	Yes.

Q	And they told you that their practice was to, to publish ads for Franklin County foreclosures in the Franklin Times, didn't they?

A	Yes.

Q	And were you aware of anyone who made a practice of publishing notices of sale for Franklin County foreclosures in the Wake Weekly while not also publishing [them] in the Franklin Times?

A	No.

Q	So you were aware when you did this, that this is something that was not done, not generally done in the legal community where you practiced, weren't you?

A	That's correct.

Warren further testified that an attorney is bound to follow the North Carolina General Statutes when conducting a foreclosure. The associate in the firm also testified that he knew he must look to the General Statutes and North Carolina case law to find the law governing foreclosures. Warren stated that he was so concerned about departing from the established practice in defendants' legal community of advertising in *The Franklin Times* that he had the associate research the matter twice in search of the applicable law on the subject. Warren realized that he was doing something others did not do and wanted to be sure that he was not in error.

The associate's testimony further established the method utilized by attorneys to research and find the law applicable to a given subject area. When asked at trial what issue he was researching, the associ-

ate stated that he was looking for what it means for a newspaper to be qualified for legal advertising. He testified that in order to answer this question, he turned to the North Carolina General Statutes. Because there were twenty-three volumes of the General Statutes, the associate turned his attention to the index of statutes in order to find the specific topic he was researching. The associate testified that he could not recall whether he looked in the index under the term "legal advertising" and that he did not discover section 1-597. A review of the index, which was introduced into evidence, shows that the term "Legal Advertising" is listed in the index and is cross-referenced to the term "Advertisements." Under the "Advertisements" heading is the subheading "Legal advertising." Within this subheading is the topic "Requisites for newspaper publication," under which N.C.G.S. § 1-597 is referenced.

We believe that the testimony of Warren and the associate in his firm, when taken in the light most favorable to the plaintiffs, established the applicable standard of care in defendants' legal community. The testimony established that it was the practice of defendant law firm, and the established practice in defendants' legal community, to advertise foreclosure notices for land located in Franklin County in *The Franklin Times*. Neither defendant law firm nor any other firms in defendants' legal community had deviated from this practice prior to plaintiffs' foreclosure proceedings. The testimony further established that an attorney must look to case law and the General Statutes to determine whether a course of action complied with requisite statutory and case law requirements. Specifically, in this case, the associate acknowledged uncertainty as to the correctness of publishing notice of foreclosure in *The Wake Weekly*, and that he was required to adequately research the question.

In addition, the associate's testimony explained to the jurors the procedure utilized by attorneys in researching a specific issue in the General Statutes, informing them that an attorney must look to the index of the General Statutes in order to find statutes on a specific subject such as legal advertising. We are satisfied that this evidence established the standard of care by which defendants' actions in representing plaintiffs during the foreclosure proceeding could be measured.

[2] We likewise are convinced that plaintiffs' evidence was sufficient to take the case to the jury on the issue of defendants' breach of this standard of care. As noted earlier, the associate did not find N.C.G.S.

§ 1-597, which is properly indexed in the index to the General Statutes. Further, it was clear from the evidence that publication in *The Franklin Times* was in compliance with the standard practice of the community and in compliance with the statutory requirements. There also was evidence that publication in *The Wake Weekly* was not in compliance with the statutory requirements.

Accordingly, defendants embarked upon a course of action, publishing the notice of sale in *The Wake Weekly* rather than *The Franklin Times*, without discovering and complying with this statute dealing with the requirements for legal advertising. Plaintiffs' evidence was sufficient to allow the jury to determine whether defendants' failure to find a pertinent, properly indexed statute under the facts of this case constituted a breach of the standard of care of other "members of the profession in the same or similar locality under similar circumstances." *Rorrer*, 313 N.C. at 356, 329 S.E.2d at 366. Consequently, the Court of Appeals erred in affirming the trial court's directed verdict for defendants.

For the foregoing reasons, the decision of the Court of Appeals, which affirmed the trial court's directed verdict for defendants, is reversed. This matter is remanded to that court for further remand to the Superior Court, Wake County, for further proceedings consistent with this decision.

REVERSED AND REMANDED.

Justice LAKE did not participate in the consideration or decision of this case.