LEWIS KURTZMAN v. APPLIED ANALYTICAL INDUSTRIES, INC.

No. 103PA97

(Filed 7 November 1997)

**Labor and Employment § 65 (NCI4th)— employment contract—assurances—moving residence—not converted from at-will**

An action for breach of an employment contract was remanded for an order setting aside the verdict for plaintiff and entering judgment for defendant notwithstanding the verdict where defendant contacted plaintiff and recruited him for a position as director of sales; plaintiff inquired into the security of the proposed position during negotiations; he was told "If you do your job, you'll have a job," "This is a long-term growth opportunity for you," "This is a secure position," and "We're offering you a career position"; plaintiff began his employment with defendant on 30 March 1992, moved immediately from Massachusetts to Wilmington, with his wife and daughter joining him following the sale of their home; and defendant terminated his employment on 2 November 1992. Although plaintiff argues that the combination of defendant's assurances and plaintiff's move to accept the offer of employment created a contract under which plaintiff could be discharged only for cause, plaintiff-employee's change of residence in the wake of defendant-employer's statements here does not constitute additional consideration making what is otherwise an at-will employment relationship one that can be terminated by the employer only for cause. The employment-at-will doctrine has prevailed in North Carolina for a century; the narrow exceptions to it have been grounded in considerations of public policy designed either to prohibit status-based discrimination or to insure the integrity of the judicial process or the enforcement of the law. The society to which the employment-at-will doctrine currently applies is a highly mobile one in which relocation to accept new employment is common. To remove an employment relationship from the at-will presumption upon an employee's change of residence, coupled with vague assurances of continued employment, would substantially erode the rule and bring considerable instability to an otherwise largely clear area of the law.

**Am Jur 2d, Employment Relationship § 35.**

Justice FRYE dissenting.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 125 N.C. App. 261, 480 S.E.2d 425 (1997), affirming a judgment awarding damages to plaintiff entered by Cobb, J., out of session on 1 August 1995, following a jury verdict for plaintiff at the 22 May 1995 Civil Session of Superior Court, New Hanover County. Heard in the Supreme Court 14 October 1997.

*Shipman & Associates, L.L.P., by Gary K. Shipman and C. Wes Hodges, II, for plaintiff-appellee.*

*Robinson, Bradshaw & Hinson, P.A., by John R. Wester and Frank H. Lancaster, for defendant-appellant.*

*Hunton & Williams, by Amy E. Simpson, for North Carolina Citizens for Business and Industry, amicus curiae.*

*Patterson, Harkavy & Lawrence, L.L.P., by Martha A. Geer, for the North Carolina Academy of Trial Lawyers, amicus curiae.*

WHICHARD, Justice.

Plaintiff, Lewis Kurtzman, brought suit against his former employer, Applied Analytical Industries, Inc., alleging, *inter alia,* breach of an employment contract. On 1 June 1995 a jury returned a verdict in plaintiff's favor and awarded him $350,000 in damages. Defendant moved to set aside the verdict or, in the alternative, for a new trial. The trial court denied both motions. Defendant appealed to the Court of Appeals, which unanimously affirmed the trial court except in immaterial part. This Court allowed defendant's petition for discretionary review on 5 June 1997.

Defendant, Applied Analytical Industries, Inc., is based in Wilmington, North Carolina, and assists clients in securing FDA approval of pharmaceutical products. Plaintiff has worked in the pharmaceutical industry for over twenty years and was employed as national sales manager of E.M. Separations Technology in Rhode Island immediately prior to his employment with defendant. Defendant contacted plaintiff in October 1991 and began recruiting him for a position as director of sales in Wilmington. In January 1992 defendant offered plaintiff the position, and the parties negotiated the terms of employment until plaintiff accepted defendant's offer on 6 March 1992.

Evidence at trial tended to show that during negotiations, plaintiff inquired into the security of his proposed position with defendant.

KURTZMAN v. APPLIED ANALYTICAL INDUSTRIES, INC.

[347 N.C. 329 (1997)]

Defendant's agents attempted to assure plaintiff by statements that included the following: "If you do your job, you'll have a job"; "This is a long-term growth opportunity for you"; "This is a secure position"; and "We're offering you a career position." Plaintiff began his employment with defendant on 30 March 1992. He immediately moved to Wilmington, and following the sale of his home in Massachusetts, his wife and daughter joined him there. Defendant terminated plaintiff's employment on 2 November 1992.

Plaintiff argues that the combination of the additional consideration of moving his residence and defendant's specific assurances of continued employment removed the employment relationship from the traditional at-will presumption and created an employment contract under which he could not be terminated absent cause. This asserted exception is gleaned principally from *Sides v. Duke Univ.*, 74 N.C. App. 331, 328 S.E.2d 818, *disc. rev. denied*, 314 N.C. 331, 333 S.E.2d 490 (1985). Plaintiff argues that the exception is well established in North Carolina's jurisprudence and that the judgment in his favor thus should be affirmed. We disagree.

North Carolina is an employment-at-will state. This Court has repeatedly held that in the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party. *Soles v. City of Raleigh Civil Serv. Comm'n*, 345 N.C. 443, 446, 480 S.E.2d 685, 687 (1997); *Harris v. Duke Power Co.*, 319 N.C. 627, 629, 356 S.E.2d 357, 359 (1987). There are limited exceptions. First, as stated above, parties can remove the at-will presumption by specifying a definite period of employment contractually. Second, federal and state statutes have created exceptions prohibiting employers from discharging employees based on impermissible considerations such as the employee's age, race, sex, religion, national origin, or disability, or in retaliation for filing certain claims against the employer. *See, e.g.*, 29 U.S.C. § 623(a) (1988) (Age Discrimination Act); 42 U.S.C. § 2000e-2a (1988) (Equal Employment Opportunities Act); 42 U.S.C. § 12112(a) (Supp. 1988) (Americans with Disabilities Act); N.C.G.S. § 95-241 (1993) (prohibiting discharge in retaliation for filing workers' compensation, OSHA, and similar claims). Finally, this Court has recognized a public-policy exception to the employment-at-will rule. *See Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 416 S.E.2d 166 (1992) (discharging an employee for refusing to work for less than minimum wage violates public policy); *Coman v. Thomas Mfg. Co.*,

325 N.C. 172, 381 S.E.2d 445 (1989) (discharging an employee for refusing to falsify driver records to show compliance with federal transportation regulations offends public policy).

Plaintiff does not rely upon any of these exceptions. He instead invokes an asserted exception earlier ·described by the Court of Appeals as follows:

> Generally, employment contracts that attempt to provide for permanent employment, or "employment for life," are terminable at will by either party. Where the employee gives some special consideration in addition to his services, such as relinquishing a claim for personal injuries against the employer, *removing his residence from one place to another in order to accept employment,* or assisting in breaking a strike, such a contract may be enforced.

*Burkhimer v. Gealy,* 39 N.C. App. 450, 454, 250 S.E.2d 678, 682 (emphasis added), *disc. rev. denied,* 297 N.C. 298, 254 S.E.2d 918 (1979). The Court of Appeals relied upon this "moving residence" exception as additional support for its holding in *Sides v. Duke University.* There, the plaintiff, a nurse anesthetist who had moved from Michigan to North Carolina to accept employment at Duke University Medical Center, sued the Medical Center based on the termination of her employment. After concluding that the plaintiff had stated a claim that fell within a public-policy exception to the at-will doctrine, the court considered a "moving residence" exception, stating:

> The additional consideration that the complaint alleges, her move from Michigan, was sufficient, we believe, to remove plaintiff's employment contract from the terminable-at-will rule and allow her to state a claim for breach of contract since it is also alleged that her discharge was for a reason other than the unsatisfactory performance of her duties.

*Sides,* 74 N.C. App. at 345, 328 S.E.2d at 828.

Here, plaintiff wishes to rely on this asserted "moving residence" exception to state a claim for relief. He does not contend that defendant's assurances of continued employment were sufficient, standing alone, to create an employment contract for a definite term. Under well-settled law, they are not. This Court has held that a contract for "a regular permanent job" is not sufficiently definite to remove the employment relationship from the at-will presumption. *Still v. Lance,*

279 N.C. 254, 259, 182 S.E.2d 403, 406 (1971); *Malever v. Kay Jewelry Co.*, 223 N.C. 148, 149, 25 S.E.2d 436, 437 (1943). The assurances defendant made here were no more specific than those in *Still* and *Malever*. Further, the assurance plaintiff here primarily relies upon, "If you do your job, you'll have a job," is not sufficient to make this indefinite hiring terminable only for cause. *See Tuttle v. Kernersville Lumber Co.*, 263 N.C. 216, 219, 139 S.E.2d 249, 251 (1964) (plaintiff-employee's contention that he had an agreement with defendant-employer such that plaintiff would "have a permanent job as long as [his] work was satisfactory" was insufficient to remove the employment contract from the terminable-at-will rule).

Nor does plaintiff contend that a statutory or public-policy exception to the at-will doctrine applies. Rather, he argues that the combination of defendant's assurances, such as, "If you do your job, you'll have a job," and plaintiff's move from Massachusetts to North Carolina to accept the offer of employment, created a contract under which plaintiff could be discharged only for cause. The question thus is whether this Court should recognize a "moving residence" exception to the general rule of employment at will.

Plaintiff's contention that this exception is well established in our jurisprudence is incorrect. This Court has not heretofore expressly passed upon it. While *Malever*, on which defendant relies, is somewhat pertinent, we do not consider it dispositive. The Court's focus there was on whether the employer's use of the term "permanent" in reference to the employment sufficed to remove the case from the employment-at-will doctrine, not on whether the employee's relocation constituted additional consideration that accomplished such removal. Further, the Court noted that the employee's relocation appeared motivated primarily by family rather than employment considerations. *Malever*, 223 N.C. at 149, 25 S.E.2d at 437. In *Harris v. Duke Power Co.*, we cited application of the "moving residence" exception in *Sides* as part of a background discussion of exceptions to the general rule of employment at will. *Harris*, 319 N.C. at 629, 356 S.E.2d at 359. We neither specifically approved nor disapproved such an exception, however, and any language in *Harris* that may be viewed as suggesting the contrary is disapproved. The pertinent language quoted above from the Court of Appeals' opinions in *Burkhimer* and *Sides* is also disapproved.

The employment-at-will doctrine has prevailed in this state for a century. *See Edwards v. Seaboard & Roanoke R.R. Co.*, 121 N.C. 490, 491-92, 28 S.E. 137, 137 (1897). The narrow exceptions to it have been

grounded in considerations of public policy designed either to prohibit status-based discrimination or to insure the integrity of the judicial process or the enforcement of the law. The facts here do not present policy concerns of this nature. Rather, they are representative of negotiations and circumstances characteristically associated with traditional at-will employment situations.

Further, as we recognized in *Coman*, "adoption of the [at-will] rule by the courts greatly facilitated the development of the American economy at the end of the nineteenth century." *Coman*, 325 N.C. at 174, 381 S.E.2d at 446. A century later, the rule remains an incentive to economic development, and any significant erosion of it could serve as a disincentive. Additional exceptions thus demand careful consideration and should be adopted only with substantial justification grounded in compelling considerations of public policy.

We perceive no such justification here. The society to which the employment-at-will doctrine currently applies is a highly mobile one in which relocation to accept new employment is common. To remove an employment relationship from the at-will presumption upon an employee's change of residence, coupled with vague assurances of continued employment, would substantially erode the rule and bring considerable instability to an otherwise largely clear area of the law. *See House v. Cannon Mills Co.*, 713 F. Supp. 159, 164 (M.D.N.C. 1988) ("Recognition of a general exception whenever relocation or a job change is involved would emasculate the terminable-at-will rule, because many if not most hirings involve either a job change or a change of residence or both."). We thus hold that plaintiff-employee's change of residence in the wake of defendant-employer's statements here does not constitute additional consideration making what is otherwise an at-will employment relationship one that can be terminated by the employer only for cause.

We do not, as the dissenting opinion suggests, hold that the establishment of "a definite term of service" is the sole means of contractually removing the at-will presumption. We simply follow settled law which holds that the employer's assurances of continued employment do not remove an employment relationship from the at-will presumption, *Tuttle*, 263 N.C. at 219, 139 S.E.2d at 251, and now hold that the asserted additional consideration of the employee's relocation of residence to accept the employment likewise does not alter this status. Because we do not recognize the exception plaintiff seeks, we need not consider, as does the dissent, whether the evidence sufficed to support a verdict for plaintiff under the asserted exception.

KURTZMAN v. APPLIED ANALYTICAL INDUSTRIES, INC.

[347 N.C. 329 (1997)]

For the reasons stated, the decision of the Court of Appeals is reversed. The case is remanded to that court for further remand to the Superior Court, New Hanover County, for an order setting aside the verdict for plaintiff and entering judgment for defendant notwithstanding the verdict.

REVERSED AND REMANDED

Justice FRYE dissenting.

Although our cases have in the past made reference to the existence of an "additional consideration" exception to the doctrine of employment at will, *see Harris v. Duke Power Co.*, 319 N.C. 627, 629, 356 S.E.2d 357, 359 (1987); *Tuttle v. Kernersville Lumber Co.*, 263 N.C. 216, 219, 139 S.E.2d 249, 251 (1964), and our Court of Appeals has more fully described the exception based on moving residence, *see Sides v. Duke Univ.*, 74 N.C. App. 331, 345, 328 S.E.2d 818, 828, *disc. rev. denied*, 314 N.C. 331, 333 S.E.2d 490 (1985); *Burkhimer v. Gealy*, 39 N.C. App. 450, 454, 250 S.E.2d 678, 682, *disc. rev. denied*, 297 N.C. 298, 254 S.E.2d 918 (1979), as the majority notes, this Court has never expressly passed upon the precise issue presented by the facts of this case. This Court granted defendant's petition for discretionary review in this case to decide, first, whether North Carolina recognizes an exception to the rule of employment at will based on: (1) an employer's making statements that can be construed as assurances that the employee will be discharged only for deficient performance, and (2) an employee's providing "additional consideration" by moving his residence to accept employment in response to those assurances. I believe a more precise statement of this question is whether an enforceable contract exists between employer and employee, so as to remove the presumption that the employment is terminable at will, where the employer makes specific assurances and the prospective employee gives additional consideration in reliance on those assurances.

The majority correctly states that North Carolina follows the doctrine of employment at will. However, employment at will is not, nor should it be, an ironclad mandate which prevents employers and employees from negotiating the terms of the employment relationship to their mutual satisfaction. The general rule of employment at will is more accurately construed as a rebuttable presumption which can be overcome by the words and conduct of the parties, allowing a jury to find that the parties in fact reached certain agreements within

KURTZMAN v. APPLIED ANALYTICAL INDUSTRIES, INC.

[347 N.C. 329 (1997)]

a contract of employment. I read the majority's decision as holding that representations made by an employer to a prospective employee and supported by additional consideration are insufficient as a matter of law to create an enforceable contract unless the employer specifies a definite term of service. Because this holding contradicts established principles of contract law, I must respectfully dissent.

The case often cited as the earliest adoption of North Carolina's employment-at-will rule, *Edwards v. Seaboard & Roanoke R.R. Co.*, 121 N.C. 490, 28 S.E. 137 (1897), in fact recognized the contractual nature of the employment relationship. The facts in *Edwards* required the Court to discern the intent of the parties as to the term of employment. The Court held that the contract was not specific as to the term of service, and therefore, "[i]t does not seem unreasonable that the parties intended that the service should be performed for a price that should aggregate the gross sum annually, *leaving the parties to sever their relations at will*, for their own convenience." *Id.* at 491, 28 S.E. at 137 (emphasis added).

In reviewing the origins of employment at will, this Court has noted that American courts moved toward the doctrine after "the industrial revolution and the development of freedom of contract." *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 174, 381 S.E.2d 445, 446 (1989). Nothing else appearing, freedom of contract arguably presumes the freedom of either party to terminate the employment relationship at will. However, an inflexible adherence to this presumption cannot stand in the face of evidence of contrary intent on the part of the contracting parties. As stated by the majority, "parties can remove the at-will presumption by specifying a definite period of employment contractually." Likewise, where an employer agrees to restrict his right to discharge an employee in exchange for additional consideration provided by the employee, the courts must recognize that a contract has been formed which removes the presumption of employment at will.

In applying this analysis, the essential inquiry is whether the necessary elements of an enforceable contract were present. "A contract is an agreement, upon a sufficient consideration, to do or not to do a particular thing." *Campbell v. Campbell*, 234 N.C. 188, 191, 66 S.E.2d 672, 674 (1951). Cases in which an employee relocates merely as an incident of accepting new employment will not rebut the presumption of employment at will. However, an agreement and consideration are both present where the employer has induced the employee to

KURTZMAN v. APPLIED ANALYTICAL INDUSTRIES, INC.

[347 N.C. 329 (1997)]

move his residence based on specific assurances that he will not be discharged except for deficient performance. This approach, which relies on contract principles, does not establish a "general exception" to employment at will in all cases involving a relocation.

The second issue presented by defendant-appellant in this case is whether, if North Carolina recognizes such an exception to the rule of employment at will, the record in this case supports the application of the exception and is sufficient to sustain the verdict returned in favor of plaintiff. Again, I believe a more precise question is whether plaintiff presented sufficient evidence to support a jury's finding that an enforceable contract existed so as to rebut the presumption of employment at will. The majority states that the assurance primarily relied upon by plaintiff "is not sufficient to make this indefinite hiring terminable only for cause" and holds that the Court of Appeals erred in affirming the trial court, which denied defendant's motion for judgment notwithstanding the verdict. I disagree.

A motion for judgment notwithstanding the verdict pursuant to Rule 50(b)(1) is essentially a renewal of an earlier motion for a directed verdict. *See Raintree Homeowners Ass'n v. Bleimann*, 342 N.C. 159, 164, 463 S.E.2d 72, 75 (1995) (citing *Dickinson v. Pake*, 284 N.C. 576, 201 S.E.2d 897 (1974)). Therefore, the test for determining whether a motion for judgment notwithstanding the verdict should have been granted is the same as that which is applied when determining whether a motion for a directed verdict could have been properly granted. *See id.* (citing *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E.2d 678 (1977)). "A directed verdict is proper only if it appears that the nonmovant failed to show a right to recover upon *any* view of the facts which the evidence reasonably tends to establish." *West v. Slick*, 313 N.C. 33, 40, 326 S.E.2d 601, 606 (1985); *see also Haas v. Warren*, 341 N.C. 148, 152, 459 S.E.2d 254, 256 (1995). Further, all of the evidence must be considered in the light most favorable to the nonmoving party, here the plaintiff, giving plaintiff the benefit of every reasonable inference to be drawn therefrom and resolving all conflicts, contradictions, and inconsistencies in plaintiff's favor. *See Haas*, 341 N.C. at 152, 459 S.E.2d at 256.

In this case the jury was presented, and answered, the following crucial questions:

[1.] Before plaintiff, Kurtzman, accepted a position of employment with defendant, AAI, did AAI make specific assurances to

KURTZMAN v. APPLIED ANALYTICAL INDUSTRIES, INC.

[347 N.C. 329 (1997)]

him that he would be discharged from employment with AAI only for deficient performance?

ANSWER: Yes

. . . .

[2.] Did the defendant, AAI, breach the employment contract by terminating the plaintiff, Kurtzman, without just cause?

ANSWER: Yes

The proper question for this Court, therefore, is whether there was evidence, viewed in the light most favorable to plaintiff as the non-moving party, from which the jury could find that defendant made specific assurances to plaintiff that he would be discharged only for deficient performance and that defendant breached the employment contract by terminating plaintiff without just cause.

There was testimony in this case that during the course of negotiation for employment, plaintiff made known his concern about job security and received certain assurances from defendant. Plaintiff, who at that time held a secure position, was concerned about the security of the position for which he was being recruited. Defendant assured plaintiff that it was a "career position." When plaintiff specifically inquired about a written contract, defendant responded that he did not need a contract "if he was any good" and that as long as he did his job, he would have a job. From these statements a jury could reasonably conclude that defendant promised plaintiff he would not be discharged unless his performance was deficient. In reliance on these assurances, and in acceptance of defendant's promise, plaintiff resigned from his job and moved his residence in order to accept employment with defendant. A jury could reasonably find that this action by plaintiff constituted sufficient additional consideration to support the employment contract.

All the evidence considered by the jury, viewed in the light most favorable to plaintiff, could reasonably support plaintiff's contention that defendant made specific assurances that plaintiff would not be discharged unless his performance was deficient and that the contract was supported by additional consideration apart from plaintiff's services. Therefore, I believe that the trial judge properly denied defendant's motion for a directed verdict and for judgment notwithstanding the verdict and that the Court of Appeals correctly affirmed the trial court.